IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Laura Seabeneck, | ) | Civil Action No. 9:09-CV-02480-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is currently before the Court for review of the Report and Recommendation of Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. §§ 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, et seq., D.S.C. The Magistrate Judge has recommended the Commissioner's decision be affirmed. The Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation. For reasons set forth below, the Commissioner's decision is reversed and remanded to allow the Commissioner to take appropriate actions and make proper findings mandated by SSR 89-52.

**STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 273 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection has been made,

-1-

and the Court may accept, reject or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The role of the Federal Judiciary in the administrative scheme established by the Social Security Act ( "Act") is a limited one. Section 205(g) of the act provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ". 42 U.S.C. § 405(g). "Substantial evidence has been defined as more than a scintilla, but less than a preponderance." *Thomas v. Celebreeze*, 331 F. 2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F. 2d 1157 (4th Cir. 1971). The Court must uphold the Commissioner's decision so long as it is supported by substantial evidence and made in accord with controlling law. *Blalock v. Richardson*, 483 F. 2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F. 2d 278, 279 (4th Cir. 1969). The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F. 2d 514, 517 (4th Cir. 1987).

It is well settled that a refusal to follow prescribed medical treatment without "justifiable cause" will preclude a finding of disability. 20 C.F.R. § 404.1530(b); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). SSR 82-59 provides that "justifiable cause" exists where the "individual is unable to afford prescribed treatment which he or she is willing to accept, but which free community resources are unavailable." The Rule provides that "all possible resources", such as free clinics and public assistance agencies, "must be explored" and the

-2-

"claimant's financial circumstances must be documented." *Id.* Further, if affordable treatment is not available to the claimant, "the case will be referred to VR." *Id.*

## BACKGROUND

Plaintiff applied for DIB and SSI on July 14, 2005, alleging disability since May 1, 2001. Plaintiff was thirty eight years old at the time she alleges her disability occurred. The primary basis of her claim arose from a well documented seizure disorder which has resulted in a history of falls resulting in significant physical injuries. This included an April 2003 incident in which a fall following a seizure resulted in a subdural hematoma and required neurosurgery. (Tr. 187) Plaintiff was prescribed anti-seizure medications to address this condition, some which were ineffective or caused serious side effects. (Tr. 30, 32) However, Plaintiff readily acknowledges that once she was prescribed the anti-seizure medication Zonegran her seizures were well controlled. (Tr. 33)

Plaintiff initially took the Zonegran with good results but was subsequently documented to have discontinued the medication for financial reasons. Plaintiff reported that she had lost her health insurance and could not afford the costly prescription medication. (Tr. 33, 36, 135, 140, 249, 310, 358) One of Plaintiff's treating physicians, Dr. Charles Jervey, documented in an office note on April 7, 2006 that he was attempting to restart the patient's Zonegran and that she "has already been approved through the patient assistance program to obtain the medication." (Tr. 357) The level of assistance or the actual cost to the patient for the Zonegran was not provided in Dr. Jervey's records. Plaintiff testified before the ALJ at her hearing on August 12, 2008 that the Zonegran would cost her $180 for a 30 day supply and she could not afford this. (Tr. 33, 47)

The record clearly establishes that the Plaintiff needs to be on an effective anti-seizure medication. (Tr. 197, 250, 281, 351) Plaintiff's treating neurologist, Dr. Paul Pritchard, stated in a Residual Functional Capacity Questionnaire for seizures that the patient "must be on anti-epileptic drugs"and indicated that it would make a difference in the number of seizures she would experience. He further stated in the Questionnaire that without proper medication her seizures would likely disrupt her co-workers, require additional supervision and prevent her from operating power equipment or a motor vehicle. (280, 281) A consultive examiner, Dr. Harriett Steinert, M.D., concluded in a November 29, 2005 report that "until [Plaintiff] gets her seizures under control, she cannot drive, climb or do many other things." (Tr. 250) Dr. Steinert further observed that if Plaintiff "could get funding for a doctor to see her and give her medication, she could get her seizures under control and go back to work." *Id.*

## DISCUSSION

SSR 82-59 sets forth the actions and documentation necessary to address the issue of whether a claimant's plea of poverty constitutes "justifiable cause" for the failure to follow prescribed medical treatment. First, contact must be made to "all possible resources" to determine if affordable medication can be provided to the patient. Second, "the claimant's financial circumstances must be documented." Third, "where treatment is not available, the case will be referred to VR." SSR 82-59. As the Fourth Circuit stated in *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986), a "claimant may not be penalized for failing to seek treatment she cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" (citation ommitted)

-4-

The ALJ referenced Plaintiff's assertion that she could not afford the prescribed medication but failed, as required by SSR 89-52, to document contacts with potential medication providers, the Plaintiff's financial condition or a referral to VR. (Tr. 18) Instead, the ALJ found Plaintiff's reasons "questionable" because the reference in Dr. Jervey's record to her qualifying for the prescription assistance program and she was studying in a graduate school program at the time she was experiencing these serious complications from her untreated seizures. *Id.* The record is silent on the cost of the medication to Plaintiff under the prescription assistance program except her unchallenged testimony at the hearing that Zonegran cost her $180 for a 30 day supply. (Tr. 33, 47) Further, there is no documentation of Plaintiff's financial condition and ability to pay this cost except her unchallenged statement that she did not have the personal funds to pay for this medication and had no health insurance. (Tr. 47) The reference to the graduate school program presumably suggests that Plaintiff had sufficient resources to pay her tuition but there is no evidence in the record documenting whether her tuition was paid by personal funds, school loans or a scholarship.

The Court finds that reversal and remand is necessary to allow the Commissioner to comply with the requirements of SSR 89-52. Compliance with the Rule could well result in resolving or reducing of the seizure activity through the provision of proper anti-seizure medication to Plaintiff. Proper documentation of the Plaintiff's financial condition, as mandated by the Rule, could definitively address whether she can or cannot afford the prescribed medication.

## CONCLUSION

For the foregoing reasons, the Court **REVERSES** and **REMANDS** the decision pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner to take appropriate actions and make proper findings mandated by Rule 89-52.

**AND IT IS SO ORDERED.**

                                                                                          _____
                                                                                          Richard Mark Gergel
                                                                                          United States District Court Judge

January 5, 2011
Charleston, South Carolina